UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Donques Demarcus Hood, #333563, | ) | C/A No.: 5:14-cv-03478-JMC-KDW |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Report and Recommendation |
| | ) | |
| | ) | |
| Warden, Perry Correctional Institution, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Donques Demarcus Hood ("Petitioner") is a state prisoner who filed this pro se Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 19, 20. On December 16, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 21. Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment on February 23, 2015. ECF No. 26. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 20, be granted.

I.      Background

Petitioner is currently incarcerated in the Perry Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In January 2007, Petitioner was indicted by an

Anderson County Grand Jury for criminal conspiracy (2007-GS-04-179) and armed robbery and possession of a firearm during the commission of a violent crime (2007-GS-04-180). ECF No. 19-2 at 1-9. Additionally, in February 2007, Petitioner was indicted by an Anderson County Grand Jury for possession of a firearm during the commission of a violent crime (2007-GS-04-538), five counts of criminal conspiracy (2007-GS-04-535, 534, 526, 532, 533), three counts of armed robbery (2007-GS-04-527, 531, 538), Unlawful Carrying of a Pistol (2007-GS-04-535), and three counts of Kidnapping (2007-GS-04-530, 528, 529). ECF Nos. 19-1 at 91-98, 19-2, 19-3. On March 3, 2009, Petitioner pleaded guilty to all charges before the Honorable Alexander McCaulay. App. 1-23.[1] Attorney Scott Robinson represented Petitioner, and Assistant Solicitor Anthony Lumford appeared on behalf of the State. App. 1. Petitioner was sentenced to five years imprisonment for  four criminal conspiracy convictions, 20 years imprisonment for three armed robbery convictions, five years imprisonment for the unlawful possession of a firearm during the commission of a violent crime conviction, thirty years imprisonment suspended to service of twenty years with the balance suspended to five years probation on the kidnapping conviction on indictment number 2007-GS-04-530, and 20 years imprisonment on the two remaining kidnapping convictions. App. 21-22. Judge McCaulay ordered Petitioner to serve concurrent sentences. App. 22.

II.    Procedural History

There was no direct appeal of Petitioner's guilty pleas. On October 16, 2009, Petitioner filed an Application for Post-Conviction Relief ("PCR") alleging ineffective assistance of counsel and involuntary guilty plea. App. 26. There, Petitioner maintained that he did not receive his discovery motion until two days before court and was forced into accepting a plea by a threat

---

[1] Citations to "App." refer to the Appendix for Petitioner's plea transcript and Post-Conviction Relief Proceeding documents. That appendix is available at ECF No. 19-1 in this habeas matter.

of a life sentence. *Id.* After filing his PCR Application, Petitioner filed a document entitled "Amendments to Post-Conviction Relief Application." App. 31. There, Petitioner alleged that he received ineffective assistance of counsel because plea counsel "allow[ed] the State, without objection, to charge, convict and sentence [Petitioner] under indictments obtained through willful acts of perjury and prosecutorial misconduct." App. 32. Additionally, Petitioner maintained that plea counsel's "performance was deficient in failing to object to the defective indictments [and] [b]ecause prejudice is presumed due to the Solicitor's acts of perjury and gross misconduct." App. 35. On January 7, 2010, the State filed a Return and requested an evidentiary hearing only on Petitioner's ineffective assistance of counsel claim. App. 36-42. An evidentiary hearing was conducted before the Honorable R. Lawton McIntosh on March 7, 2012. App. 43. Petitioner was present and represented by Hugh W. Welborn, Esq., and Assistant Attorney General Kaelon E. May represented the State. *Id.* Petitioner and his plea attorney Scott Robinson testified at the hearing. App. 43-78.

In an Order filed January 27, 2009, the PCR court denied Petitioner's PCR Application in full, making the following summary of evidence and findings of fact and conclusions of law:

### ***Applicant's Testimony***

At the PCR hearing Applicant testified that the plea judge informed Applicant at his guilty plea that Applicant could appeal but Applicant did not understand what that meant. Applicant testified that he did not ask plea counsel about an appeal because Applicant was scared and that if Applicant had understood what an appeal was then Applicant would have appealed. Applicant testified that he was not guilty of the kidnapping charges, that he told plea counsel he did not want to sign the plea agreement to the kidnapping charges, but that counsel told Applicant he could receive a life sentence without a plea agreement. Applicant testified that his responses at his guilty plea hearing were made out of fear.

Applicant testified that he was never informed of the evidence that the state had. Applicant testified that his name was misspelled on the indictments and that the indictments were falsified as being true-billed because the grand jury was not in session when Applicant indictments were issued. Applicant testified that he and

counsel reviewed a video and the statements, that Applicant did not ask the plea court for more time to speak with counsel because Applicant did not know he could do that. Applicant testified that he was guilty of conspiracy, knowing about all the Armed Robberies, but that he was not guilty of the gun charges and the kidnapping charges. Applicant testified that he did not have prior knowledge that kidnappings were going to take place and that Applicant was also not guilty of Armed Robbery.

Applicant testified that he met with plea counsel three times, one of which was Applicant's bond hearing. Applicant testified that counsel did not threaten Applicant to plead guilty but did inform Applicant that he could receive a life sentence if Applicant was convicted at trial. Applicant testified that at his first meeting with counsel, counsel told Applicant that he had a good enough case to go to trial, that just before Applicant was to go to trial counsel informed Applicant that the case was not good and Applicant should plead.

### *Mr. Robinson's Testimony*

At the PCR hearing plea counsel testified that he was appointed to represent the Applicant, that he met with Applicant on more than one occasion, and that he discussed the elements of the charges and what the state had [to] prove with Applicant. Counsel testified that it was his normal to (sic) procedure to review the indictments with his clients if counsel was in possession of the indictments and that counsel had no reason to believe Applicant's indictments were falsely true-billed. Counsel testified that he reviewed the possible sentences with Applicant as well as discussed Applicant's version of the facts. Counsel testified that he filed Rule 5 and Brady motions, received the discovery materials that included incident reports, a video, warrants, and various statements.

Counsel testified that he reviewed the discovery materials with Applicant, that counsel did not recall if Applicant viewed the video but that counsel did discuss the video and its contents with Applicant. Counsel testified that Applicant was fully aware of the video and its contents, and that the video showed that Applicant did not point the gun. Counsel testified that he discussed possible defenses with Applicant, that counsel would have requested a Denno hearing if Applicant proceeded to trial because Applicant had given confessions. Counsel testified that Applicant had given three statements to police in which he talked about having a gun during the robberies and that Applicant was the lookout. Counsel testified that he explained 'hand of one hand of all' to Applicant.

Counsel testified that he and Applicant discussed challenging Applicant's statements but that it was not likely they would win such a challenge. Counsel testified that he and Applicant reviewed Applicant's co-defendant's statements together. Counsel testified that he had sufficient time to prepare Applicant's case and that he engaged in plea negotiations with the state on Applicant's behalf. Counsel testified that the offers made by the state were not very good, that

Applicant had a lot of charges; and that the state could have tried Applicant in a fashion that Applicant could have received a sentence of life without parole. Counsel testified that Applicant's co-defendants received sentences of twenty and fifteen years. Counsel testified that [he] discussed all plea negotiations with Applicant and that Applicant never advised counsel that he did not want to plead to the kidnapping charges.

Counsel testified that he and Applicant discussed the benefits and drawbacks of pleading guilty versus going to trial and that the biggest issue Applicant faced was the statements for which Applicant had signed waivers. Counsel testified that Applicant made the decision to plead guilty and that counsel did not pressure Applicant into pleading guilty. Counsel testified that Applicant never requested for counsel to file an appeal and that counsel did not believe there was any factual or legal basis to appeal.

### III.  APPLICABLE LAW

In a post-conviction relief action, the Applicant bears the burden of proving the allegations in their application. Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where the application alleges ineffective assistance of counsel as a ground for relief, the Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984); Butler, 334 S.E.2d 813.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. 668. The Applicant must overcome this presumption in order to receive relief. Cherry v. State, 300 S.C. 1 15, 386 S.E.2d 624 (1989).

The reviewing court applies a two-pronged test in evaluating allegations of ineffective assistance of plea counsel. First, the Applicant must prove that counsel's performance was deficient. Under this prong, the court measures an attorney's performance by its "reasonableness under professional norms." Cherry, 300 S.C. at 117, 386 S.E.2d at 625, citing Strickland. Second, counsel's deficient performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry, 300 S.C. at 117-18, 386 S.E.2d at 625. With respect to guilty plea counsel, the Applicant must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed. 2d 203 (1985).

## IV. FINGINGS OF FACT AND CONCLUSIONS OF LAW

This Court has reviewed the testimony presented at the evidentiary hearing, observed the witnesses presented at the hearing, passed upon their credibility, and weighed the testimony accordingly. Further, this Court reviewed the Clerk of Court records regarding the subject convictions, the Applicant's records from the South Carolina Department of Corrections, the application for post-conviction relief, the transcripts and documents from the prior proceedings, the exhibits introduced into evidence at the hearing, and legal arguments of counsel. Pursuant to S.C. Code Ann. § 17-27-80 (2003), this Court makes the following findings of fact based upon all of the probative evidence presented.

### 1. Ineffective Assistance of Counsel

Applicant asserts that counsel was ineffective for failing to inform him of his right to appeal. This Court finds that Applicant has failed to meet his burden of proof. When the question is whether counsel was ineffective in failing to file a direct appeal from the conviction and sentence, the United States Supreme Court has held that counsel has a constitutionally-imposed duty to consult with a defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal, or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Roe v. Flores-Ortega, 528 U.S. 410, 120 S.Ct. 1029 (2000). Counsel testified that Applicant never asked counsel to file an appeal and that counsel did not believe there was any legal of (sic) factual basis to appeal. Moreover, at the guilty plea hearing the plea judge asked Applicant, "you understand you have a right to appeal your guilty plea and the sentence that l hand down and you have 10 days to do so, do you understand?" (Tr. p.14, lines 8-10). Applicant indicated to the plea judge that he understood his right to appeal. (Tr. p.14, line 11). Under these circumstances, counsel's failure to file an appeal was not unreasonable. This Courts finds that Applicant did not present any evidence or testimony that would entitle Applicant to a belated appeal. Therefore, this Court finds that this allegation is denied and dismissed.

Applicant asserts that counsel was ineffective for failing to timely provide the discovery materials to Applicant; for failing to adequately advise Applicant; and for failing to challenge the indictments. This Court finds that Applicant failed to meet his burden of proof. Counsel testified that he received the discovery materials and reviewed the materials with Applicant. Applicant testified that counsel discussed the video and the statements with Applicant. This Court finds that the discovery materials were provided to Applicant in some fashion and that there had not been any evidence presented to the contrary. The guilty plea transcript reflected that Applicant indicated he had fully discussed all aspects of the case with counsel and that Applicant was completely satisfied with counsel's services. (Tr. p.12-13).

To establish counsel was inadequately prepared, an Applicant must present evidence of what counsel could have discovered or what other defenses could have been pursued had counsel been more fully prepared. <u>Jackson v. State</u>, 329 S.C. 345, 495 S.E.2d 768 (1998). The "brevity of time spent in consultation, without more, does not establish that counsel was ineffective." <u>Easter v. Estelle</u>, 609 F.2d 756, 759 (5th Cir. 1980). When claims of ineffective assistance of counsel are based on lack of preparation time, an Applicant challenging his conviction must show specific prejudice resulting from counsel's alleged lack of time to prepare. <u>United States v. Cronic</u>. 466 U.S. 648 (1984); <u>U.S. v. LaRouche</u>, 896 F.2d 815 (4th Cir. 1990). Here, Applicant could not point to any specific matters counsel failed to discover which would have caused him to proceed with a jury trial instead of pleading guilty. This Court finds the Applicant offered no evidence at the PCR hearing that counsel could have found that would have been likely to have any outcome more favorable to Applicant. The Applicant did not produce any witnesses or offer any other evidence from which this Court could conclude that the outcome of the case would likely have been different, had that evidence been developed. This Court finds that Applicant failed to show counsel's performance was deficient and any resulting prejudice. Therefore, this Court finds that these allegations are denied and dismissed.

Applicant asserts that counsel was ineffective for failing to challenge the indictments of the grounds that Applicant's name was misspelled and that the indictments were not properly true-billed. This Court has reviewed the indictments and finds the indictments to be regular and sufficient on their face. The indictments were properly true billed by the grand jury and Applicant failed to present compelling evidence to the contrary. A presumption of regularity attaches to proceedings in the Court of General Sessions. <u>Pringle v. State</u>, 287 S.C. 409, 339 S.E.2d 127 (1986). Absent evidence to the contrary, the courts will presume that a properly returned indictment is valid. <u>State v. James</u>, 321 S.C. 75, 472 S.E.2d 38 (Ct. App. 1996). The misspelling of a name in the indictment is classified as a non-jurisdictional defect. <u>Thompson v. State</u>, 357 S.C. 192, 593 S.E.2d 139 (2004). This Court finds and the record reflects that the misspelling of Applicant's name was addressed at the beginning of the guilty plea hearing and corrected. (Tr. p.3-4). Guilty pleas act as a waiver of all non-jurisdictional defects and defenses. <u>State v. Munsch</u>, 287 S.C. 313, 338 S.E.2d 329 (1985). This Court finds that Applicant has failed to show that counsel's performance was deficient as Applicant failed to offer any basis on which counsel could have objected. This Court finds that Applicant cannot prove resulting prejudice; therefore, this allegation is denied and dismissed.

## 2.  Involuntary Guilty Plea

Applicant asserts that he was coerced into pleading by the threat of a life sentence and that prior to the plea hearing Applicant was informed he was going to trial but ended up having to plea. This Court finds Applicant has failed to meet his burden of proof in showing that his guilty plea was involuntary. At the plea hearing

Applicant indicated to the plea judge that counsel explained to Applicant the charges, the possible punishments, and Applicant's constitutional rights. (Tr. p. 8, lines4-7). Applicant indicated that he fully understood the charges against him and the range of possible punishments. (Tr. p.9, lines2-6). The plea judge informed Applicant of his right to a jury trial and Applicant indicated that he understood his right to a jury trial. (Tr. p.9, lines16-23). Applicant indicated that he understood by pleading guilty he was waiving his right to a jury trial (Tr. p.10, lines 17-22). Applicant admitted the truth of the charges against him. (Tr. p.10-11). Applicant indicated to the plea judge that he was completely satisfied with the services of plea counsel. (Tr. p.13, lines2-4). Additionally, Applicant indicated to the plea judge no one had threatened or pressured Applicant to get him to plead guilty and that Applicant had had enough time to decide whether to plead guilty. (Tr. p.13, lines 11-23). This Court finds the overwhelming evidence in the record and presented through the testimony of the witnesses at the hearing reflects that the plea was knowingly and voluntarily entered. Boykin v. Alabama, 395 U.S. 238 (1969); Vickery v. State, 258 S.C. 33, 186 S.E.2d 827 (1972). Therefore, this Court finds that this allegation is denied and dismissed.

**All Other Claims**

Except as discussed above, this Court finds that the Applicant affirmatively waived the remaining allegations set forth in his application at the hearing. A waiver is a voluntary and intentional abandonment or relinquishment of a known right. Janasik v. Fairway Oaks Villas Horizontal Property Regime, 307 S.C. 339, 415 S.E.2d 384 (1992). A waiver may be express or implied. "An implied waiver results from acts and conduct of the party against whom the doctrine is invoked from which an intentional relinquishment of a right is reasonably inferable." Lyles v. BMI Inc., 292 S.C. 153, 158-59, 355 S.E.2d 282 (Ct App. 1987). The Applicant's failure to address these issues at the hearing indicates a voluntary and intentional relinquishment of his right to do so. Therefore, any and all remaining allegations are denied and dismissed.

## V. CONCLUSION

Based on all the forgoing (sic), this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this Court to grant his application for post conviction relief. Therefore, this application for post conviction relief must be denied and dismissed with prejudice.

This Court notes that Applicant must file and serve a notice of intent to appeal within thirty (30) days from receipt of this Court's Order to secure the appropriate appellate review. *See* Rule 203, SCACR. Rule 71.1(g), SCRCP; Bray v. State, 336 S.C. 137, 620. S.E.2d 743 (2005), for the obligation of Applicant's counsel to file and serve notice of appeal. The Applicant's attention is also directed to South

Carolina Appellate Court Rule 243 for appropriate procedures after notice has been timely filed.

**IT IS THEREFORE ORDERED:**

1. That the Application for Post-Conviction Relief must be denied and dismissed with prejudice; and

2. Applicant must be remanded to the custody of Respondent.

App. 81-90. Subsequently, Petitioner filed a Notice of Appeal on April 26, 2012. ECF No. 19-6.

On appeal, Petitioner was represented by Wanda H. Carter, Deputy Chief Appellate Defender with the South Carolina Commission on Indigent Defense. ECF No. 19-7. In a *Johnson*[2] Petition for Writ of Certiorari, Attorney Carter presented one issue, which quoted verbatim was: "The PCR judge erred in denying petitioner's allegation that he did not voluntarily and intelligently waive his right to a direct appeal in the case." *Id.* at 3. Petitioner also filed a pro se Petition for Writ of Certiorari in addition to the *Johnson* petition filed by Attorney Carter. ECF No. 19-9.

Petitioner raised the following five issues in his petition, which quoted verbatim were:

1.) The PCR Judge erred in denying Petitioner's allegation that he did not voluntarily and intelligently waive his right to a direct appeal
2.) The Lower Court made an unreasonable determination of the facts in light of the evidence at the PCR hearing of petitioners direct appeal claim
3.) The Lower Court made an unreasonable application of Strickland vs Washington when it ruled that plea counsel was not ineffective at any stage prior to an after plea hearing.
4.) The Lower Court made an unreasonable application of Strickland vs. Washington and extended it to a new context by citing state court cases of little or no relevance to the plea issues presented at PCR.
5.) PCr Court erred when it failed to give specific finding of fact of petitioner's subject matter jurisdiction claim and Indictment Issues.

*Id.* at 2. After Petitioner's appeal was transferred, *see* ECF No. 19-10, the South Carolina Court of Appeals denied Petitioner's petition and granted Counsel's request to withdraw. ECF NO. 19-

---

[2] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

11. The Remittitur was issued on July 11, 2014. ECF No. 19-12. This habeas Petition followed on August 28, 2014. ECF No. 1.

III.    Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE:  PCr Judge erred in denying petitioners allegation that he did not voluntarily and intelligently waive his right to direct appeal.
>
> Supporting Facts:   During PCr hearing Petitioner testified that he was not informed of his right to an appeal. Petitioner stated that he did not know if he had to file the appeal notice or if his lawyer was charged with the responsibility of filing the appeal notice. Trial counsel testified at the hearing and explained in effect that it was the Judge who mentioned an appeal wich in turn was a atacit admission that he did not explain appealate procedure or appellate rights. ECF No. 1 at 5.
>
> GROUND TWO:  Sentencing Discrepency/Disproportionate Sentence
> Supporting Facts: Petitioner claimed that he understood that he was supposed to receive a sentence on the low end of the spectrum 10-15 yr but recieved a 30 yr sentence suspended to 20 yr. Trial Counsel did not adequately explain sentencing consequences prior to petitioners sentencing defendant or petitioner must understand the sentencing of his plea. *Id.* at 7.
>
> GROUND THREE:  Deliberate Prosecutorial Misconduct
> Supporting Facts:   My indictments specifically state that the Grand Jurors convened in a court of General Sessions and make absolutely no reference to a court of Common Pleas. The Solicitor violated statutory, state and federal law and is guilty of malicious abuse of the legal process. *Id.* at 8.

B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth

specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 323 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.        Habeas Corpus Standard of Review

1.        Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615

11

(4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 397-98 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

      2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

      a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)      (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

          (A)    the applicant has exhausted the remedies available in the courts of the State; or

          (B)    (i) there is an absence of available State corrective process; or

               (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)      An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR.  State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d

767 (S.C. 1976).  If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of

the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply.  *See Teague*

15

*v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

### 3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice.  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### D.  Analysis

#### 1.   Procedurally-Barred Grounds

Respondent contends that Petitioner exhausted his available state post-conviction remedies. ECF No. 19 at 21. However, Respondent maintains that because Petitioner did not properly exhaust all of his claims, some may be technically exhausted and subject to procedural bars. *Id.* Specifically, Respondent argues that Grounds One and Two were "neither raised to nor ruled upon by the PCR Court," and are therefore barred from review in federal habeas corpus. *Id.* at 21-22. Respondent concedes that Petitioner "arguably" raised Ground Three in his PCR

action, but Ground Three was not ruled upon by the PCR court. *Id.* at 22. Therefore, Respondent argues that this claim is also procedurally barred in federal habeas corpus. *Id.* at 22-23.

The undersigned has reviewed Petitioner's PCR application, *see* App. 24-30, his Amendments to his PCR application, *see* App. 31-35, and the transcript of the PCR hearing, App. 43-79. In his PCR application, Petitioner stated that he "did not know what an appeal was [and] was not informed of the option to appeal." App. 25. However, Petitioner did not allege that he received a disproportionate sentence in either of his PCR application documents. In his PCR Amendment, Petitioner alleged that he received ineffective assistance of counsel because his plea counsel failed "to object to an indictment obtained through willful acts of perjury and gross prosecutorial misconduct . . . ."App. 32.

During his PCR hearing, Petitioner testified about Grounds One and Three. When asked whether anyone told Petitioner he had a right to appeal, Petitioner testified:  "I guess he [the judge] did say that I could appeal, but I really didn't know what an appeal was. I had no clue at the time what an appeal really meant." App. 46. However, Petitioner admitted that during his plea he indicated to the court that he understood he had the right to appeal his guilty plea within 10 days. *Id.* Furthermore, Petitioner testified but for his attorney not explaining what an appeal was, he would not have pleaded guilty and would have gone to trial. App. 47. Additionally, Petitioner testified about numerous purported problems with his indictments. App. 49-61. However, Petitioner never raised the issue of whether he received a disproportionate sentence, nor did Petitioner maintain that he received ineffective assistance of counsel because "trial counsel did not adequately explain sentencing consequences prior to [P]etitioner's sentencing. . . ." ECF No. 1 at 6-7.

Pursuant to *Martinez v. Ryan*, an error by a prisoner's post-conviction counsel during his initial state collateral review proceeding can qualify as "cause" to excuse the procedural default of a claim of trial counsel ineffectiveness claim if: (1) state law required the prisoner to wait until post-conviction review to raise *Strickland* claims; (2) the prisoner's underlying *Strickland* claim is "substantial"; and (3) the prisoner can establish that his post-conviction counsel was ineffective under the *Strickland* standard. 132 S.Ct. 1309, 1318–1319 (2012). Here, Petitioner raised Grounds One and Three to the PCR court, and the PCR court expressly ruled on (1) whether counsel was ineffective in failing to file a direct appeal from the conviction and sentence and (2) whether plea counsel was ineffective for failing to challenge the indictments. To the extent Petitioner raised these precise issues to the PCR court's attention but the PCR court failed to rule on them, Petitioner could maintain that his PCR counsel was ineffective, thus excusing any procedural default. *See id.* (holding inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial). Therefore, the undersigned does not find that Grounds One and Three are procedurally barred.

However, the undersigned finds that Petitioner's Ground Two claim regarding his sentencing is procedurally defaulted. Ground Two was not raised in Petitioner's application documents, *see* App. 24-35, nor was this argument presented to the PCR court during the PCR hearing, s*ee* App. 43-79.  Furthermore, Petitioner's claim concerning a disproportionate sentence was not ruled on by the PCR court. App. 80-90. Therefore, this issue is procedurally barred from federal habeas review. *See Plyler v. State*, 424 S.E.2d 477, 478 (S.C. 1992) (holding that an issue that was neither raised at the PCR hearing nor ruled upon by the PCR court is procedurally

barred). Accordingly, Petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the claim delineated as Ground Two in his habeas Petition.

Concerning Ground Two, Petitioner may overcome procedural defaults and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review. *See Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996). The existence of cause ordinarily turns upon a showing of: 1) a denial of effective assistance of counsel; 2) a factor external to the defense which impeded compliance with the state procedural rule; or 3) the novelty of the claim. *Murray*, 477 U.S. at 488.  Having reviewed the record evidence and the parties' legal memoranda, the undersigned finds that Petitioner has not shown sufficient cause and prejudice to excuse the default of the above-referenced claims.   Thus, these issues are procedurally barred from consideration by this court and should be dismissed. *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir.), *cert. denied*, 519 U.S. 1016 (1996) (finding in order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court.").

In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.*  The court's review of the record does not support a showing of any cause and

prejudice or actual innocence to excuse the default. Thus, Petitioner's Ground Two claims are procedurally barred from consideration by this court and should be dismissed. The undersigned therefore recommends that Respondent's Motion for Summary Judgment be granted as to Ground Two.[2]

       2.  Merits

          a.  Ineffective Assistance of Counsel-Failure to Inform and Explain Petitioner's Right to an Appeal

Petitioner contends that he was denied effective assistance of counsel because his plea counsel did not explain appellate procedure or his appellate rights to him. ECF No. 1 at 5. Therefore, Petitioner alleges that the PCR court erred in denying his PCR application because Petitioner did not voluntarily and intelligently waive his right to a direct appeal. *Id.* Respondent moves for summary judgment and argues that Petitioner's Ground One claim is procedurally barred. ECF No. 19 at 26-27. Alternatively, Respondent argues that Petitioner cannot show that the PCR court made an unreasonable determination or unreasonably applied federal law in denying Petitioner's claim for relief. *Id.* at 27-28. In response to this argument, Petitioner maintains that "he did not enjoy the benefit of a direct appeal in this case," and he summarized the PCR testimony. ECF No. 26 at 2-4. Petitioner argues that his plea counsel did not inform him of his right to appeal, and therefore, he cannot "waive a right that he is unaware of because a voluntary waiver is the relinquishment of a <u>known</u> right." *Id.* at 5 (emphasis in Response).

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court

---

[2] The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits of Ground Two.

held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of a guilty plea, ineffective assistance of counsel claims may be asserted in limited circumstances. In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In rejecting Petitioner's application for post-conviction relief on this ground, the PCR court indicated that the specific "question is whether counsel was ineffective in failing to file a direct appeal from the conviction and sentence. . . ." App. 86. Further the PCR court noted that plea counsel testified that Petitioner never asked counsel to file an appeal and that counsel did not believe there was any legal or factual basis to appeal. *Id.* The PCR court also found that the plea court specifically asked Petitioner whether he understood he had a right to appeal his guilty plea and sentence and had 10 days to file the appeal. *Id.* During his plea, Petitioner testified that he understood his right to appeal. *Id.* Therefore, the PCR court found that plea counsel's failure to appeal Petitioner's plea was not unreasonable. *Id.* Moreover, the PCR court found that Petitioner "did not present any evidence or testimony that would entitle [Petitioner] to a belated appeal." *Id.*

The PCR court also found that Petitioner failed to meet his burden of proof in showing that his guilty plea was involuntary. App. 88. Specifically, the PCR court found Petitioner "indicated to the plea judge that counsel explained to [Petitioner] the charges, the possible punishments, and [Petitioner's] constitutional rights." *Id.* Further, the PCR court found that Petitioner "indicated that he fully understood the charges against him and the range of possible punishments." App. 88-89. The PCR court found that during his plea hearing, Petitioner indicated that he was satisfied with the services of plea counsel. App. 89. Therefore, the PCR court determined that Petitioner's involuntary guilty plea claim was unfounded and denied and dismissed the claim. *Id.*

Out of an abundance of caution, the undersigned is reviewing Petitioner's Ground One on the merits. It appears that Petitioner raised this issue during his PCR hearing even though the PCR court did not rule on the precise issue of whether Petitioner received ineffective assistance of counsel for plea counsel's alleged failure to advise Petitioner of his right to appeal. The undersigned finds that Petitioner cannot demonstrate that the PCR court or South Carolina Court of Appeals unreasonably misapplied clearly established federal law in rejecting this claim, or that the PCR court made objectively unreasonable factual findings. A review of the guilty plea transcript and the testimony at the PCR hearing reveals that the PCR court's denial was fully supported by the record and was reasonable and therefore, it is entitled to deference here. Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Ground One.

### b. Deliberate Prosecutorial Misconduct-Indictments

In Ground Three Petitioner maintains that his indictments specifically state that the grand jurors convened in a court of general sessions and make absolutely no reference to a court of

common pleas. ECF No. 1 at 8. Further, Petitioner argues that the Solicitor violated statutory, State, and federal law and is guilty of malicious abuse of legal process. *Id.* Respondent moves for summary judgment and argues that Petitioner's Ground Three claim is procedurally barred. ECF No. 19 at 31. Alternatively, Respondent argues that Petitioner's Ground Three claim is without merit. *Id.* at 31-33. In response to this argument, Petitioner maintains that the Solicitor "submitted false and misleading information to the court, and thereby committed an act of perjury against public justice." ECF No. 26-1 at 3.

Under the federal due process clause, a defendant has the right to notice of the specific charge against him, and "deficiencies in state court indictments are generally not a basis for habeas relief unless they made trial so egregiously unfair as to deny due process." *Ashford v. Edwards,* 780 F.2d 405 (4th Cir. 1985); *see also Cole v. Arkansas,* 333 U.S. 196 (1948). Here, the indictments made Petitioner aware of the substance and nature of the crimes charged against him. Furthermore, during his plea hearing, Petitioner testified that he fully understood the nature of the charges against him. App. 9. Additionally, the misspelling of Petitioner's name was noted and corrected during his plea hearing. App. 3-4. The indictments set forth the elements of the offense, and Petitioner has never complained that he was not on notice of the charges against him. Therefore, there is no indication of any "egregiously unfair" process. Additionally, the PCR court reviewed Petitioner's indictments and found that they were "regular and sufficient" on their face. App. 88. Moreover, the PCR court determined that the "indictments were properly true billed by the grand jury and [Petitioner] failed to present compelling evidence to the contrary." *Id.* As a matter of law, the PCR court found that courts will presume that a properly returned indictment is valid, that the misspelling of a name in an indictment is a non-jurisdictional defect, and that guilty pleas "act as a waiver of all non-jurisdictional defects and defenses." *Id.*

The undersigned finds that Petitioner cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law in rejecting this claim, or that the PCR court made objectively unreasonable factual findings. A review of the guilty plea transcript and the testimony at the PCR hearing reveals that the PCR court's denial was fully supported by the record and was reasonable and therefore, it is entitled to deference here. Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Ground Three.

IV.    Conclusion

For the foregoing reasons, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 20, be GRANTED and the habeas Petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

April 17, 2015                                             Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**